UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| D.G. BNF B.G., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-94 |
| | § | |
| FLOUR BLUFF INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Plaintiff's Application for Attorney's Fees and Expenses.  (D.E. 46.)   For the reasons stated herein, the Court awards reasonable attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I) in the amount of $50,175.70, with pre-judgment and post-judgment interest at a rate of 0.18% per annum.

**I.     Jurisdiction**

The Court has federal question jurisdiction, 28 U.S.C. § 1331, over this action as Plaintiff has brought suit under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(2).

**II.     Factual and Procedural Background**

Plaintiff D.G., by next friend B.G. (his mother), filed this action in this Court on March 30, 2010 against Defendant Flour Bluff Independent School District ("Flour Bluff ISD"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  (D.E. 1.)  Plaintiff filed an Amended Complaint on September 13, 2010.  (D.E. 15.)  The Court held a bench trial in this action on March 1, 2011, and held a second day of hearings on March 23, 2011.

On May 24, 2011, the Court entered Findings of Fact and Conclusions of Law in which it ruled that Defendant Flour Bluff ISD violated the IDEA Child Find Provision, 20 U.S.C. § 1412(3)(A), and awarded Plaintiff one year of compensatory educational services under the IDEA, as well as attorney's fees, which counsel was to detail in a later submission.  (D.E. 45.)[1]  This issue is now fully briefed.  (D.E. 46; D.E. 47.)

## III.    Discussion

The IDEA provides "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--(I) to a prevailing party who is the parent of a child with a disability."   20 U.S.C. § 1415(i)(3)(B)(i)(I).   Plaintiff asserts that a reasonable award of attorney's fees for counsel's representation in the administrative proceeding and in federal court is $50,175.70.  (D.E. 46 at 4.)   Plaintiff has submitted an itemized bill and supporting affidavit.  (D.E. 46-1; 46-2; 46-3.)  Defendant objects to Plaintiff's request for attorney's fees on several bases, namely (1) Plaintiff was not the "prevailing party" under the IDEA, (2) Plaintiff unreasonably protracted the final resolution of the controversy, (3) Plaintiff is not entitled to fees subsequent to Defendant's written settlement offer, and (4) Plaintiff's fee request is excessive.  (D.E. 47.)  The Court takes each objection in turn.

---

[1] D.G. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Tourette's Syndrome, and rheumatoid arthritis.  Special education services were eventually provided in January 2010 based upon his rheumatoid arthritis, but not ADHD or Tourette's Syndrome.  In making its ruling, the Court explained: "[B]y November 2008, Defendant Flour Bluff ISD 'had reason to suspect that [D.G.] had a disability, and . . . had reason to suspect that special education services might be needed to address that disability.' El Paso ISD, 567 F. Supp. 2d at 950. Moreover, the Court finds that Defendant did not evaluate D.G. 'within a reasonable time after having notice of the behavior likely to indicate a disability,' id., as it did not conduct an ARD meeting until November 2009. Defendant thus violated IDEA's Child Find provision. 20 U.S.C. § 1412(3)(A)."  (D.E. 45 at 16.)

A.      "Prevailing Party" Status

As the Fifth Circuit has explained, "to achieve prevailing-party status, a party must attain both: a remedy that [1] alters the legal relationship between the parties and [2] fosters IDEA's purposes; and [3] some judicial imprimatur on a material alteration of the legal relationship." Gary G. v. El Paso Indep. Sch. Dist., 632 F.3d 201, 207 (5th Cir. 2011); see also El Paso Indep. Sch. Dist. v. Richard R., 591 F.3d 417, 421-22 (5th Cir. 2009).[2]  "A finding that a party is a prevailing party only makes him eligible to receive attorneys' fees under the IDEA; it does not automatically entitle him to recover the full amount that he spent on legal representation." Gary G., 632 F.3d at 208 (citing Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 209 (5th Cir. 1998)).

Defendant contends that Plaintiff is not the "prevailing party" because Plaintiff "did not foster a material change in the relationship of the parties."  (D.E. 47 at 2-4.) Essentially, Defendant argues that no "material change" occurred because (1) it was willing to assess D.G. for special education services as early as May 2009 (after it became aware that B.G. was seeking such testing in April 2009), (2) it did in fact evaluate D.G. when parental consent was obtained, (3) D.G. was successful under the Section 504 accommodations plan,[3] and (4) D.G.'s placement in special education occurred after the hearing officer rendered a decision in favor of Defendant, prior to this lawsuit.  (D.E. 47 at 2-4.)

As noted above, the Court held in its Findings of Fact and Conclusions of Law that Defendant violated the IDEA Child Find provision, 20 U.S.C. § 1412(3)(A), and awarded Plaintiff one year of compensatory educational services under the IDEA.  (D.E.

---

[2] There is no dispute that the "judicial imprimatur" element has been satisfied, given the Court's findings.
[3] This refers to accommodations provided pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

45 at 18.)   The Court also determined that Plaintiff is the "prevailing party" as that term is used in the IDEA.  (D.E. 45 at 17-18.)  Plaintiff's status as the "prevailing party" is apparent for three reasons.

As an initial matter, Defendant's recitation of the facts ignores certain key details, namely that D.G. was placed in the restrictive Student Discipline and Guidance Center ("SDGC") for almost the entire 2008-2009 school year, even though this assignment was supposed to last for only 31 "successful" days.  (See D.E. 45 at 2-3, 6, 15, 16.)  D.G.'s behavioral problems continued at SDGC, and this Court has already concluded that B.G. sought services other than those offered under Section 504 as early as February 2009. (D.E. 45 at 4.)  Moreover, it is simply not true to say that D.G. was "successful" under the Section 504 plan, in light of his protracted placement in SDGC and his substandard academic performance.  (D.E. 45 at 4-5.)  Defendant also cannot rely upon B.G.'s own delays in seeking special education testing, because a school's responsibilities under IDEA are not dependent upon a parent first raising the issue.  See, e.g., Weyrick v. New Albany-Floyd County Consol. Sch. Corp., 2004 WL 3059793, at *2 (S.D. Ind. Dec. 23, 2004) ("The IDEA does not rely on parents to come forward to ask for help.").  While it is true that Defendant did provide special education services beginning in January 2010, this Court expressly found that IDEA evaluation and services should have occurred much earlier, and D.G. "should not have been allowed to languish in the disciplinary program of SDGC for almost an entire academic year before he was evaluated for IDEA services." (D.E. 45 at 16.)

Second, this Court has awarded D.G. one year of compensatory educational services.  This award most definitely alters the legal relationship between the parties and

fosters the purposes of the IDEA.  <u>Gary G.</u>, 632 F.3d at 207.  Courts have generally found

"prevailing party" status when a plaintiff obtains an award of compensatory educational

services, and in many cases "prevailing party" status is not even seriously disputed when

a plaintiff obtains such an award.  <u>See, e.g.</u>, <u>Damian J. v. Sch. Dist. of Philadelphia</u>, 358

Fed. Appx. 333, 334, 336 (3d Cir. 2009) (district court awarded plaintiff "compensatory

education for the first half of the 2005-2006 school year," and appellate court noted

"[t]he School District does not dispute that the Plaintiffs are the prevailing party in this

case."); <u>Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt</u>, 752 F. Supp.

2d 1, 5 (D.D.C. 2010) ("[Student] is the prevailing party in this case.  This Court . . .

order[ed] the [school] to cover the cost of the 1,400 hours of tutoring already

administered and the cost of an additional 950 hours of tutoring in broad reading and 950

hours of tutoring in broad math as compensatory education. Therefore, there was a

judicially sanctioned change in the legal relationship of the parties, and there was judicial

imprimatur on an enforceable judgment."); <u>Breanne C. v. Southern York County Sch.</u>

<u>Dist.</u>, 732 F. Supp. 2d 474, 489-90 (M.D. Pa. 2010) ("The court will award Breanne 484

hours of compensatory education . . . . [A]s the prevailing party, Plaintiffs are entitled to

reasonable attorneys fees."); <u>Laura P. v. Haverford School Dist.</u>, 2009 WL 1651286, at

*1 (E.D. Pa. June 12, 2009) ("[I]t is undisputed Plaintiffs are eligible to recover

attorney's fees for prevailing in obtaining about two-and-a-half years of compensatory

education.").

     Finally, the Court found that Defendant violated the IDEA Child Find provision,

20 U.S.C. § 1412(3)(A).  (D.E. 45 at 18.)   Such a finding also necessarily supports the

conclusion that Plaintiff is the prevailing party.  <u>See</u> <u>El Paso Indep. Sch. Dist. v. Richard</u>

R., 567 F. Supp. 2d 918, 951 (W.D. Tex. 2008) (upholding hearing officer decision that school district "failed its Child Find obligation," and concluding that student was the "prevailing party," entitled to attorney's fees); Miller ex rel. Miller v. San Mateo-Foster City Unified Sch. Dist., 318 F. Supp. 2d 851, 864 (N.D. Cal. 2004) (stating that hearing officer found violation of Child Find provision, and concluding that plaintiff "was the prevailing party on several of the issues at the administrative hearing, and thus the court may award attorneys' fees under section 1415(e)(4)(B)").

In light of the foregoing, the Court reiterates its conclusion that Plaintiff is the "prevailing party," entitled to attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I). Having made this determination, the Court now must determine the amount of those fees.

### B.    Unreasonable Protraction

"The IDEA features a plethora of provisions dealing with attorney's fees, several of which contemplate reducing the attorney's fee award of a party that ultimately prevails in an administrative or judicial proceeding."  Richard R., 591 F.3d at 423.  Relevant here, attorney's fees may be reduced if "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy."  20 U.S.C. § 1415(i)(3)(F)(i); see also 34 C.F.R. § 517(c)(4)(i).  Defendant contends that a fee reduction is warranted under this section because B.G. refused to give written consent for special education testing until August 14, 2009, almost four months after Defendant first became aware that such testing was sought.  Further, ARD meetings were rescheduled at parental request, resulting in another three week delay.  (D.E. 47 at 4.)

There is little Fifth Circuit authority on what constitutes unreasonable protraction of a controversy, apart from rejection of a settlement offer (addressed below). See, e.g., Richard R., 591 F.3d at 429. In general, courts appear to be reluctant to reduce fees on this basis, at least in the absence of strong evidence supporting such a reduction. Compare P. ex rel. Mr. P. v. Newington Bd. of Educ., 512 F. Supp. 2d 89, 115 (D. Conn. 2007) ("The court also concludes that the parents exercised good faith in bringing this federal court action to appeal the findings of the administrative hearing officer with respect to the 2005-2006 IEP. Although the parents did obtain some of the relief they originally sought at the administrative hearing, they did not obtain all of it and consequently decided to initiate this action. Thus, a reduction for unnecessary prolongation of the litigation is not warranted under 20 U.S.C. § 1415(i)(3)(F)(i).") with Hiram C. v. Manteca Unified Sch. Dist., 2004 WL 4999156, at *3 (E.D. Cal. 2004) ("Plaintiff's limited success, unrequested relief, and needless protraction of the controversy thus merit a reduction in the number of hours used for the lodestar calculation.")

In this case, the Court does not believe that a four month delay in B.G.'s consent to special education testing constitutes an unreasonable protraction of this controversy, especially given that much of this delay occurred over the summer. Moreover, a mere three week delay in the ARD meeting is insufficient to constitute an unreasonable protraction. The Court declines to reduce Plaintiff's attorney's fees on this basis.

**C.     Fees Subsequent to Settlement Offer**

Section 1415(i)(3)(D) addresses limitation of awards for attorney's fees after a written settlement offer. It provides:

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if-

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i); 34 C.F.R. § 300.517(c)(2)(i); see Gary G., 632 F.3d at 207.

Subparagraph (E) provides an exception to this rule: "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E). The Fifth Circuit has explained, "[e]arly resolution through settlement is favored under the IDEA. The statute bars an award of attorney's fees for work performed subsequent to a written settlement offer that does not achieve anything more than that which was offered." Richard R., 591 F.3d at 426.

Defendant contends that, pursuant to Section 1415(i)(3)(D)(i), Plaintiff's attorney's fees should not be awarded for any work performed after November 20, 2009, when Defendant made a settlement offer in accordance with 20 U.S.C. § 1415(e). (D.E. 47 at 5.) Defendant's November 20, 2009 settlement offer provided, in relevant part:

[T]he district is willing to provide [D.G.] access to tutoring after school three times a week for 45 minutes a day for the remainder of the school year. Additionally, [D.G.] can access a summer program for his academics for the summer of 2010. Further, the district is willing to allow [D.G.] to access an additional 30 minutes of counseling services a week for the remainder of the 2009-10 school year. Finally, the district will be

> scheduling an ARD meeting to consider the OHI form that the physician filled out that was sent to my office two days ago.  These services are offered in an effort to informally resolve this matter.  These services do not include what he is receiving in accordance with his 504 accommodation plan.  (D.E. 47-1.)

Here, the Court concludes that "the relief finally obtained by the parents" is in fact "more favorable to the parents than the offer of settlement," and therefore reduction under Section 1415(i)(3)(D)(i) is not justified.  The settlement offer merely proposed access to tutoring three times per week (for forty-five minutes a day), thirty minutes of additional counseling per week, and access to a summer program.  In contrast, this Court has awarded one full year of compensatory educational services, which would offer D.G. substantially more assistance.  The settlement offer also mentioned the scheduling of an ARD meeting, but Defendant was already required to provide such a meeting under the IDEA.  Finally, it is notable that the settlement offer did not reference attorney's fees.  See Richard R., 591 F.3d at 429-30 ("EPISD wisely included the payment of reasonable attorney's fees to R.R. as part of its settlement offer. Consequently, R.R. was offered all requested educational relief and reasonable attorney's fees, leaving absolutely no need to continue litigating.").  Not only is the ultimate relief obtained "more favorable to the parents than the offer of settlement," but the Court also finds that B.G. "was substantially justified in rejecting the settlement offer."  20 U.S.C. § 1415(i)(3)(D), (E).

In light of the foregoing, the Court will not limit attorney's fees incurred after the November 20, 2009 settlement offer, under Section 1415(i)(3)(D).

**D.    Fee Request**

The IDEA provides, "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and

quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection."   20 U.S.C. § 1415(i)(3)(C).   Under applicable regulations, the Court may reduce attorney's fees if the "amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," 34 C.F.R. § 300.517(c)(4)(ii), or where "[t]he time spent and legal services furnished were excessive considering the nature of the action or proceeding."  Id. § 300.517(c)(4)(iii).  The Fifth Circuit has explained:

> [t]he calculation of attorneys' fees involves a well-established process. First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted; in making such an adjustment, the court looks to the twelve factors established in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 208-09 (5th Cir. 1998)[4]; see Ruben A. v. El Paso Indep. Sch. Dist., 657 F. Supp. 2d 778, 789-90 (W.D. Tex. 2009) (citing Jason D.W.).

 Defendant argues that Plaintiff's fee request is excessive, in light of the nature of the action and the work performed.  (D.E. 47 at 5.)  Defendant does not specifically take issue with Mr. Jonas's $300 hourly fee, but rather contends that if his expertise and experience entitle him to such a fee, he should have spent less time on certain important tasks in this case.  Specifically, Defendant references counsel's documentation of (1) 41.9

---

[4] The Johnson factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Jason D.W., 158 F.3d at 208-09.

hours for drafting the post-hearing brief, (2) 18 hours spent for disclosures at the administrative hearing, (3) 16.4 hours for e-mail communications at the administrative level, and (4) 13.4 hours for e-mail communications at the District Court level. Defendant also notes that counsel's "time asserted for the e-mail communications in each instance is greater than the time the Plaintiff spent in the actual trial of the administrative hearing and the federal trial.  Consequently, this amount is excessive and lacks specificity to justify the amount of time."  (D.E. 47 at 5-6.)

As an initial matter, the Court finds Mr. Jonas's hourly fee to be consistent with those "prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  Mr. Jonas has "practiced in the area of special education law since 1985, and since 1995 [his] practice has been exclusively in the area of special education law."  (D.E. 46-3 at 1.)  An hourly rate of $300 is not unreasonable.

Turning specifically to Defendant's areas of concern, the Court does not find that any of the hours spent are excessive.  First, the documentation of 41.9 hours on Plaintiff's post trial brief is reasonable, in light of the voluminous administrative record, the day-long trial (which included the examination of several physicians and psychologists), as well as the length and detail of Plaintiff's submission.  This was a complex case, with many different reports and other records to review and reconcile, and to consolidate into one written submission.  The task was likely made somewhat more time consuming due to the fact that no summary judgment motions were filed in this action, nor were there any other substantial written submissions prior to trial.  As for the other disputed documentations, the Court also does not find these to be excessive. There is no reason to

doubt time spent for disclosures at the administrative level, in light of the voluminous records, or for e-mail communications at either the administrative or federal court level. Plaintiff need not separately delineate all 161 e-mails at the administrative level (D.E. 46-1 at 11), or all 134 e-mails at the federal court level (D.E. 46-2 at 8), given that many of these communications were likely privileged. The mere fact that the "time asserted for the e-mail communication . . . is greater than the time that the Plaintiff spent in the actual trial of the administrative hearing and the federal trial" is not overly important, in light of the fact that these billings cover all e-mails between April 15, 2009 (the initial intake) through May 31, 2011, a period of over two years. The Court rejects Defendant's contention that such billings are "excessive."

The Court, having reviewed counsel's itemized invoice in whole, finds that a total of $50,175.70 is not excessive, in light of the fact that Mr. Jonas has been retained as counsel in this matter for over two years, the complexity of the case, the length of the record, and the fact that this matter could not be resolved without a full bench trial. Using the lodestar calculation, Plaintiff's counsel reports a total of 154 hours multiplied by an hourly rate of $300. To this is added $3,975.70 in costs. The total is $50,175.70. (D.E. 46-2 at 9.) The Court does not find that any of the Johnson factors warrant adjustment of this amount. As such, the Court concludes that Plaintiff's request for $50,175.70 in attorney's fees is proper.

Finally, Plaintiff requests pre- and post-judgment interest at the highest rate allowed by law. (D.E. 46 at 5.) "Post-judgment interest is appropriate when a district court enters a judgment awarding reasonable attorney's fees under IDEA." Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 28 (D.D.C. 2004); Holbrook v. District of

<u>Columbia</u>, 305 F. Supp. 2d 41, 48 (D.D.C. 2004); <u>see</u> 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").   In contrast, "[w]hether pre-judgment interest is to be awarded . . . is subject to the discretion of the court and equitable considerations.  The purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation."  <u>Kaseman</u>, 329 F. Supp. 2d at 28 (citations omitted); <u>see also, e.g.,</u> <u>Ryan M. v. Bd. of Educ. Of City of Chicago, District 299</u>, 731 F. Supp. 2d 776, 795-96 (N.D. Ill. 2010) ("The purpose of prejudgment interest is to ensure that an award is fully compensatory."); <u>B.P. v. Charlotte-Mecklenburg Bd. of Educ.</u>, 2010 WL 1418334, at *9 (W.D.N.C. Apr. 2, 2010) ("The decision to award prejudgment interest in an IDEA case is a matter within the Court's discretion.  In deciding whether to award prejudgment interest, the Court must weigh the equities in the particular case.").

 Defendant does not specifically oppose Plaintiff's request for pre- or post-judgment interest, and the Court finds that such interest is proper in this case.[5]  In light of the foregoing, the Plaintiff shall be awarded, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I), attorney's fees and costs totaling $50,175.70, with pre- and post-judgment interest at a rate of 0.18% per annum.

**IV.    Conclusion**

 For the reasons stated above, the Court awards to Plaintiff reasonable attorney's fees in the amount of $50,175.70, with pre-judgment and post-judgment interest at a rate

---

[5] Such an award is proper even though there is no evidence of bad faith by Defendant.  In fact, "[g]ood faith does not . . . mitigate a losing party's obligation to pay the appropriate measure of prejudgment interest." <u>Ryan M.</u>, 731 F. Supp. 2d at 795.  "Because the purpose of prejudgment interest is to compensate for the time value of money, not to punish a particular party, the [defendant's] good conduct cannot excuse its obligation to pay prejudgment interest." <u>Id.</u>

of 0.18% per annum, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I). Final Judgment will be entered by separate order.

SIGNED and ORDERED this 15th day of June, 2011.

Janis Graham Jack
United States District Judge